# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                Case No. 15-20319

ZACHARY BURDETTE,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**

        Defendant Zachary Burdette pleaded guilty to distribution of heroin and fentanyl with a death resulting, 21 U.S.C. § 841(b)(1)(C). (ECF No. 28, PageID.94.) On November 10, 2016, the court sentenced him to 120 months imprisonment. (ECF No. 76, PageID.414.) His projected date of release is in March 2024. *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited Oct. 26, 2020).

        Defendant filed a "Motion to Reduce Sentence." (ECF No. 127.) He argues the health risk of the Coronavirus Disease ("COVID-19") justifies his immediate release. The government has filed a response and Defendant has replied. (ECF Nos. 130, 132-34.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). Defendant's motion will be denied.

        A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and

determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." U.S. Sentencing Guidelines Manual § 1B1.13. The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. *Id.* § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances.[1] Federal Bureau of Prisons, U.S. Department of Justice, *Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* (2019).

---

1     After the passage of the First Step Act in 2018, district courts in the Sixth Circuit remain divided over whether only the BOP Director may determine if a defendant's circumstances fall within the category of "Other Reasons." *Compare United States v. Bolze*, --- F. Supp. 3d ----, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) (quoting U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D)) ("[O]nly the 'Director of the Bureau of Prisons' can determine that such 'other reasons' exist."), *with United States v. Young*, 458 F. Supp. 3d 838, 845 (M.D. Tenn. 2020) ("[F]ederal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

2

In all, a defendant seeking compassionate release must present "extraordinary and compelling" circumstances, must have § 3553(a)'s sentencing factors that weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B1.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B1.13; *see also United States v. Allen*, 819 F. App'x 418, 419 (6th Cir. 2020).

Defendant cites several medical conditions in support of his release. He claims he has hypertension, depression, Attention Deficit Disorder ("ADD"), low IQ, and poor vision. (ECF No. 127, PageID.1328.) Although not raised in his motion, the government points out that Defendant qualified as obese in early to mid 2018. He hovered around the borderline of obesity, holding a body mass index ("BMI") of 30.9 and 31.6. (ECF No. 130, PageID.1346; ECF No. 131, PageID.1368.) Obesity is classified as a BMI of 30 or above. *Defining Adult Overweight and Obesity*, Centers for Disease Control and Prevention, https://www.cdc.gov/obesity/adult/defining.html (last visited Oct. 26, 2020). However, the court is presented with no evidence of his recent weight and whether he is currently obese. The government states the BOP has not weighed Defendant since mid 2018. (ECF No. 130, PageID.1346.)

Before the court may consider a motion for compassionate release, Defendant must exhaust administrative remedies. *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (quotation removed) ("When properly invoked, mandatory claim-processing rules must be enforced."). Under § 3582(c)(1)(A), an inmate may seek compassionate release himself only if he submits a request for compassionate release to his warden and he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to

3

bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier."

In order to fulfill the exhaustion requirement, Defendant's request to the BOP must explain the basis for his release. Allowing a prisoner to present one description of his circumstances to the BOP and another to the court would undermine the statutory scheme of administrative exhaustion that Congress purposefully designed. It would prevent "the agency [from] address[ing] the issues [in the request] on the merits," the purpose of exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). BOP regulations state that a prisoner must present to the agency "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 C.F.R. § 571.61(a)(1). If the alleged "extraordinary or compelling circumstances" are not presented, *id.*, the BOP has not had an opportunity to address them and the prisoner's claim has not been fully exhausted. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746-47, 749 (6th Cir. 2019) (citing *Woodford*, 548 U.S. at 90-91) (recognizing issue exhaustion when statutes state "in more general terms . . . 'administrative remedies [must be] exhausted' . . . [and] an agency's rules so require," such as requirements that parties "indentify[] specific issues to be considered [by the agency]"); *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (finding that an agency regulation requires issue exhaustion when it states that an individual must "list the specific issues to be considered").

Defendant did not explain or recite his current justifications for release to the BOP. Hypertension, depression, ADD, low IQ, and poor vision are nowhere mentioned in the request sent to the BOP. (*See* ECF No. 130-2, PageID.1359.) Thus, Defendant has failed to exhaust administrative remedies.

4

Nonetheless, the court will address the merits of Defendant's request, and finds that he does not qualify for compassionate release. Defendant admits he does not fall within the "Medical Condition of the Defendant" category in § 1B1.13 of the Sentencing Guidelines. (ECF No. 133, PageID.1439, Defendant's Reply ("It's clear that [Defendant] would not qualify for release . . . under [those] guidelines.").) Defendant is not currently "suffering from a terminal illness." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(i). Nor is he "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care . . . and from which he . . . is not expected to recover." *Id.* § 1B1.13 cmt. n.1(A)(ii). There is no indication that Defendant's condition is deteriorating or that he is in a critical state, and he does not satisfy the Sentencing Commission's policy statement. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii).

Defendant's circumstances are also not "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A). "Extraordinary" is defined as "exceptional to a very marked extent." *Extraordinary*, Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Compelling*, Webster's Third International Dictionary, Unabridged (2020). A court in this district has described the requirements of "extraordinary" in the context of compassionate release "as beyond what is usual, customary, regular, or common," and a "'compelling reason' as one so great that irreparable harm or injustice would result if the relief is not granted." *United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (Leitman, J.).

5

Defendant is a young, thirty-four-year-old man. (ECF No. 130, PageID.1345.) His essential hypertension is common and treatable. Hypertension affects "[n]early half of adults in the United States . . . or 45%." *Facts About Hypertension*, Centers for Disease Control and Prevention, https://www.cdc.gov/bloodpressure/facts.htm (last visited Oct. 26, 2020). With proper monitoring, the condition can be successfully treated and controlled. *See High Blood Pressure (Hypertension)*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417 (last visited Oct. 26, 2020) ("Changing your lifestyle can go a long way toward controlling high blood pressure."); *Prevent and Manage High Blood Pressure*, Centers for Disease Control and Prevention, https://www.cdc.gov/bloodpressure/prevent_manage.htm (last visited Oct. 26, 2020) ("Whatever your age, you can take steps each day to keep your blood pressure in a healthy range."). While depression, ADD, low IQ, and poor vision are unfortunate conditions, like hypertension, they are not exceptional, extreme, or otherwise warrant Defendant's immediate release. 18 U.S.C. § 3582(c)(1)(A).

The outbreak of COVID-19 does not alter this analysis. Defendant is incarcerated at FCI Elkton. While the prison experienced a substantial outbreak of COVID-19 earlier in the year, the conditions there have improved substantially. FCI Elkton now has only one active case of COVID-19 among inmates and staff. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 26, 2020).

The BOP has taken countermeasures to mitigate the spread of COVID-19. For instance, all newly arriving inmates are tested and placed in quarantine. *BOP*

6

*Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 26, 2020). Prisoners cannot leave quarantine until they test negative. *Id.* Symptomatic inmates are isolated, tested, and treated. *Id.*; Federal Bureau of Prisons, U.S. Department of Justice, *Correcting Myths and Misinformation About BOP and COVID-19* (2020).

While in prison, Defendant receives monitoring and treatment. (*E.g.*, ECF No. 131, PageID.1400 (notes of Defendant receiving a COVID-19 test in July 2020).) The court has few assurances as to Defendant's access to quality healthcare if released. COVID-19 will remain a risk, and potentially a substantial one depending on Defendant's chosen behaviors. *See How to Protect Yourself & Others*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Oct. 26, 2020) (detailing actions recommended to mitigate the risk of contracting COVID-19). This is significant given the dangerous activities Defendant consistently engaged in prior to incarceration. He had a serious drug abuse problem, (ECF No. 130, PageID.1352-53), and, in September 2015, he overdosed on heroin twice in two days, both while on bond. (*Id.*, PageID.1341.) He then operated a vehicle heavily intoxicated and struck a parked car. (*Id.*, PageID.1341-42; ECF No. 37, PageID.135.) His bond was revoked. (ECF No. 130, PageID.1341-42; ECF No. 37, PageID.135.) While in prison, Defendant is separated from this dangerous, if not life-threating, lifestyle.

To release Defendant, the court would need to speculate as to whether Defendant will contract COVID-19 while at FCI Elkton, whether he will develop serious symptoms, and whether his heath, and access to quality healthcare, will improve upon

7

release. The court is not convinced the extraordinary remedy of compassionate release is warranted. Accordingly,

  IT IS ORDERED that Defendant's "Motion to Reduce Sentence" (ECF No. 127) is DENIED.

             s/Robert H. Cleland    /
             ROBERT H. CLELAND
             UNITED STATES DISTRICT JUDGE

Dated: October 30, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 30, 2020, by electronic and/or ordinary mail.

             s/Lisa Wagner     /
             Case Manager and Deputy Clerk
             (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\15-20319.BURDETTE.MotiontoReduceSentence.RMK.docx